Welcome to the fourth and final day of our sitting here in Jacksonville. It's been a lovely week. Thank you to Valerie Geddes down in front for taking care of us all week. I should introduce, because he may not be familiar to all of you, but Judge Luck and I are very pleased to have Judge Leibowitz with us here. Judge Leibowitz is a district judge in Miami, sits on the Southern District of Florida, two-time graduate of the University of Miami, also has a master's degree from the London School of Economics, right? So, Fred, carefully. And pleased to have him here. We really appreciate him helping us with our work. We've got just a couple of things that I'll mention to you at the outset. Number one, please know that we have read your materials. We've read the briefs, the cases, the statutes, the record materials. So, you've got limited time before us, so I wouldn't waste it with a bunch of factual and procedural ramp-up. Just get right to the core of the issues you think are most important. Number two, the lighting system. You'll understand green is go, yellow is slow, red is stop. I'm not great about cutting people off in the middle of a sentence, but please respect the court's time. When you see the red light go off, wrap it out. All right. With that, let's call the first case. United States of America versus Richard Brilhart, 24-13226 and 24-13232. Mr. Escona? Escona, Your Honor. Escona, very well. For the appellant, Ms. Capusta? Correct pronunciation? Perfect. Two for two. Mr. Escona, you've reserved five minutes for rebuttal. Yes, Your Honor. Correct. Very well. Proceed when ready. Thank you, Your Honor. First of all, Your Honor, thank you for this opportunity to be here, Your Honor. It's really nice to be here, first time. Very good. And argue a case. Welcome. Never argued a case in front of three judges before. All right. This is a real pleasure, but Your Honor, my position on this one, Judge, after reviewing the question to be discussed today, Judge, and the information provided by the court, my position is that under the court's prior president rule, Alberts has been undermined to the point of abrogation, Your Honor. In this case, Albert relied directly on the sentencing guidelines commentary to define sexual abuse or exploitation, but Dupree, applying Kisor, holds that courts may consult the commentary only after exhausting the traditional tools of construction and finding the guidelines text genuinely ambiguous. Do you understand that taking that position could hurt you because applying a Dupree slash Kisor analysis, we may end up concluding that sexual abuse of a minor plainly does include the conduct that, what I'll call the second incident that went into the pattern and practice guideline. Do you understand that? I do, Judge, but the second question I'm going to argue that, Judge, that even under that Dupree analysis, enhancements should not still be applied, Your Honor, as the state concedes. Because when we look at Kisor, I mean, when we look at Dupree and apply it to a Mr. Brillhardt situation, and we go directly to the text, Your Honor, the text of the 2G2.25B5 says the defendant engaged in a pattern of activity involving sexual abuse or exploitation of a minor increased by five levels. So applying Kisor, applying Dupree under the circumstances in this enhancement, it doesn't necessarily say that it is ambiguous. Because looking at the federal statutes, it's certain. Well, a minor is generally considered one that's under the age of either 21 or 18. Right. Yes, Your Honor. Here, as you know, the incident, the incident conduct involved a young woman who was 16 years old. That's correct, Judge. Yes. Would apply if we read minor to mean 18, someone who's younger than 18. Sure. Yes, Your Honor. But pattern of activity implies two or more. And then sexual abuse of a relation or exploitation of a minor implies that it is serious offenses. And that's why the statutes are actually explained in the commentary. So when we look at the federal statutes, it does provide . . . it really provides a serious offenses against minors. It seems like . . . maybe I'm misunderstanding. It seems like you're kind of wanting to have it both ways. The first thing you said is I think that Alberts has been effectively abrogated by Dupree, so you shouldn't defer to the commentary. And then when Judge Luck asks you, well, we've got a second offense here involving a 16-year-old, and you say, yeah, but if we look to the commentary, it seems like it ought to be a serious offense as defined in the statutes. Well, on the facts we had on our briefs, Your Honor, the district court on that one was in error because it considered a violation of probation, Your Honor. But Mr. Brillhardt actually didn't break any law in the Michigan state law. And obviously, it's also not in any of the statutes under the federal statutes. But the guideline doesn't require . . . and again, this works against you and the position you're taking. It doesn't require a violation of a statute or a criminal act. It requires a pattern of practice of doing something. And we know, as a matter of fact, that he had a pattern and practice of having sexual relationship with a 15-year-old and then having a sexual relationship with a 16-year-old. It doesn't matter if we don't look at the commentary whether it's a violation or not. It only is if that happened or not. And we know, whether it happened in the context of a probation violation, whether it happened in the context of nothing at all other than just the fact, it happened. Yes, I see what you're saying, Your Honor. But I argue that the district court that he actually married the minor, the young lady, and actually had kids, Your Honor, and the person, the minor he married, was emancipated at that time and age of consent in Michigan was 16. So she was already emancipated and 16 at the age of consent. Right, and I understand why that wasn't against the law in the state of Michigan. But in terms of, if we're just to take the plain language under a Dupree-Kaiser analysis, assuming it's unambiguous of what sexual abuse of a minor is, it seems to me that sexual abuse is having a sexual act with somebody who is a minor and minor generally is understood to be under 18. That's one way to look at it. I think there might be some other arguments that could be made, but if we look at it that way, doesn't that mean that we have to count the second act? I'm inclined to say no, Your Honor, because of the facts that I argued on the briefs, Your Honor. But alternatively, I would say that there's also certainly an argument, Your Honor, that we have to investigate Alberts, because whatever's left of it should still hold unless it directly conflicts. And that's what I was going to say, Your Honor, that in this case, it seemed like the Dupree holding was totally inconsistent with Alberts. Can I ask you a practical question? Sure, Judge. If we, let's say we agree with your position in your brief and the government's position that has agreed with you that we should vacate the sentence, would that also mean we vacate the supervised release sentence? In other words, it all was done together. Would we just vacate the whole sentence and send it back for re-sentencing and all of it? I would say just vacate the whole thing. We'll just redo it, Your Honor. Do you want that? And the reason I ask is because for whatever reason, no one brought up the application of Section 3583-K. I agree, Your Honor. That's Dupree passed me, Judge. That's what? That completely, I completely missed that, Judge. Well, no, I understand why you wouldn't bring it up. I'm less understanding as to why the government wouldn't bring it up or the district court. But 3553-K, 3583-K, sorry, specifically says that where someone is on SORNA and commits a violation under certain chapters of the U.S. Code, including the one here, that the supervised release violation must be five years, must. That's more than the 24 months that your client got. And so if we send this back, I know I'm going to say to the district court, you really should consider doing what the law requires you to do, which is to impose a five-year consecutive sentence to the underlying offense. That would not work to your client's advantage. I see, Judge. Let's not do that, Your Honor. So do you understand why a remand might not, may end up resulting in a higher sentence as opposed to a lower sentence? I see, Judge. Okay. Yeah. Can I ask you in the little bit of time that you've got remaining, will you address the Fourth Amendment issue in the case? Say again, Your Honor? The Fourth Amendment issue, the suppression issue? Yes, there was a suppression issue right in the appeal, Your Honor. Yeah, so would you address that? As you may know, the Fourth Circuit two days ago rendered a decision sort of on your side of the split of this hash-matching dispute. Oh, wow. I have not read that, Your Honor. I'd love to . . . Well, it's fine. I mean, it's top of mind. So would you address that issue? I can't address it at this time, Judge. I focused myself on the questions that was provided on the memo, Your Honor. I see. Okay, very well. And I would certainly love to . . . Well, you've briefed it. You've briefed it well enough. We have your argument. Thank you, Your Honor. I just didn't want to speak to it. Yes. So, in closing, Your Honor, the fact that it's . . . under Dupree, the enhancement would still apply. It would not still apply based on the analysis we just did, Your Honor. Thank you very much, Your Honor. All right, very well. You've got some rebuttal time remaining . . . Yes, Judge, thank you. . . . if you would like it. Ms. Capusta, let's hear from you. Thank you, Your Honors. May it please the Court. Julia Capusta for the United States. I'd like to start with our concession that the District Court improperly applied the pattern of activity enhancement and address Your Honor's questions. First, Kaiser and Dupree have not undermined Alberts to the point of abrogation. It is our position that the meaning of sexual abuse and exploitation in the guideline is genuinely ambiguous, so Alberts properly deferred to the commentary. Why is that? I don't think I understand why that is, and I guess why the government is so insistent that Alberts survives. Well, our position is that after exhausting the tools of construction, uncertainty remains and there's no clear answer to two questions. The first being whether sexual abuse includes abuse of sexual contact, and the second being how to treat state offenses that are broader than but not included within the federal offenses. So in engaging in a Kaiser analysis, which Dupree requires now, you look first to the text and dictionary definitions. For example, Miriam Webster defines sexual abuse as... Counsel, we only get there, I'm sorry to stop you there, but we only get there if it's abrogated. In other words, you're doing the analysis, but that presupposes the question, which is, is it undermined or not? And there are ways we look at whether precedent has been undermined or not. Let me ask you this. Do we have any cases where neither party argued at all Dupree and in fact relied on the commentary in arguing a guideline issue to us, the 11th  They relied solely on the commentary. So let me be more specific. Do we have any cases post-Dupree, so in Dupree land, where both sides, for whatever reason, relied on the commentary in arguing a guideline issue to us? What have we done in those cases? I think in those cases, your honors have just treated it as neither side has challenged the validity of the commentary, and so you've applied the commentary. Right. Why wouldn't we do that here? I do, I believe, because we have conceded. It is up to your honors to decide whether to accept our concession, so you... Certainly to accept the concession, but you both argued to us the commentary, right? How are we different from those cases that you just referenced, where both sides have argued the commentary to the court, and the court has simply said, we don't decide the Dupree issue because neither side has addressed it or approached it that way? It's our position that Alberts is binding law, and Alberts requires deference to the commentary, and Dupree has not abrogated Alberts because it's not clearly on point and clearly contrary to Alberts. Alberts decided or held that the sexual abuse that a defendant committed when he himself was a minor qualified him for the pattern of activity enhancement because it fell within 2241, and 2241 applies to minors as well as adults. Dupree addressed a different guideline and a very different question, and it held that the commentary cannot expand on an otherwise unambiguous guideline provision, and even though it's our position here that the commentary is ambiguous, or the guideline is ambiguous, we would still take the same position even if the guideline were unambiguous. That's because Dupree has not addressed the guidelines, and it has not eviscerated or demolished all of its fundamental props, so in the post-Dupree world, in applying a guideline requires two steps. First, asking whether the guideline is genuinely ambiguous, and then either applying that guideline plus the commentary to the facts before the court, or applying an unambiguous guideline to the facts before the court. What is the holding of Dupree? I think we have to agree that Dupree does apply beyond the career offender guideline, and certainly it sets out a framework for when there is an open situation of how to analyze it going forward, but what do we do, and Judge Grant brought this up in her concurring opinion in Dupree, what do we do with all this other stuff that's come before it? That's really the question we have to answer, assuming that we get beyond the fact that no one has even argued this to us, and we've raised it ourselves, but let's get beyond that for the second. What is the actual holding of Dupree such that it would undermine or abrogate the holding of another case? Well, Dupree, on the way to deciding that the controlled substance offense was improperly applied, held that before applying the commentary to a guideline, the courts must first determine that the guideline is genuinely ambiguous, and in Alberts, of course, the court did not decide that the guideline was genuinely ambiguous before applying the guideline. Why was it not genuinely ambiguous? We certainly set out the framework, but why did we say it was not genuinely ambiguous in Dupree? Because there was a definition contained within the guideline itself. It wasn't just a term within the guideline. The guideline actually defined the term controlled substance offense, which itself was unambiguous, and then the commentary tried to add to that explicit definition within the guideline. So what we said is, I understand it, and obviously I was a little confused about Dupree, but as I understand it, what we said was guideline said X and commentary said Y. And in that case, where there is a conflict between the two, you cannot then look to the commentary. Yes, Your Honor. Do we have that in this case? No, we do not have that here because sexual abuse and exploitation is not defined within the guideline itself, and that's why Dupree is not clearly on point or clearly contrary to Alberts. So I think there are several categories of cases in this post-Dupree world of most of the guidelines will have prior cases in which the courts have deferred to the commentary in deciding the guideline issue. In some cases, Dupree cannot have abrogated them because the guideline may be genuinely ambiguous, even if the court hadn't made that first determination. Dupree cannot have abrogated any case in which the guideline is genuinely ambiguous. But it's also our position that just because a court may have improperly deferred to the commentary, that doesn't mean the courts improperly applied the guideline. And so when we're talking about what it takes to abrogate a prior decision, that prior appellate decisions may have used the wrong methodology into reaching their result. That's merely an argument that the case has been wrongly decided, and that a prior decision's reasoning conflicts with Dupree is not enough to undermine that decision to the point of abrogation. And that's what the Supreme Court recognized in Loper-Bright when it overruled Chevron deference. It says, this has not implicated our prior decisions under statutory stare decisis. Applying Chevron deference, they said, at most, that's an argument that those decisions were wrongly decided. And that's what we have here with Dupree as it applies to prior appellate decisions. Even if, for example, Alberts, it did not take the path that Dupree requires by first deciding whether the guideline was genuinely ambiguous, but the result it reached still was proper. And even under Dupree, that guideline would apply to that defendant under Alberts. So it has not undermined Alberts to the point of abrogation. Let's assume for the moment that we think we should do this on our own. We think Alberts is undermined, so we're not bound by Alberts. And now we're interpreting it on our own without any precedent. Your view, I just want to be clear, is that it is genuinely ambiguous? Yes, Your Honor, because when you look to dictionary definitions, for example, some, like American Heritage refers to sexual abuse as criminal sexual activity. Oftentimes that involving someone who is too young to consent. American Heritage Dictionary refers to sexual contact, infliction of sexual contact upon a person by forceful compulsion, or engaging in sexual contact with a person who is too young to consent. All of them seem to be, at least as applied here, seem to target it to at least consent. Yes, Your Honor. And the issue we have here is the dictionary definitions themselves do not answer the question the age of consent. And while on... When you look at the engage... In other words, you sort of touched on this earlier, but this is not a categorical approach guideline. It specifically tells you to look at conduct. Yes, Your Honor. You agree with that? Yes, it doesn't require a conviction. So if you look at conduct, well, not even a conviction, you just look at what the underline conduct is. The conduct here was in Michigan, and at the time, Michigan had a consent law that was under 16, but not 16 itself. Why would that not answer the question? Well, so that's my point, is then the next step is looking to the structure of the guideline itself, and the guideline itself points you to these headings that sexual abuse 2A3.1, sexual abuse 2A3.2, sexual abuse of a minor, and those refer to explicit code sections. So engaging in a Dupree-type analysis gets you to the federal statutes and answers the age of consent. So that's why we still concede here, whether the guideline is ambiguous or unambiguous, that his... On this record, where all we know is the age gap itself, the 16-year-old and the 21-year-old, that is not enough to fall within the ordinary meaning of sexual abuse or exploitation. Now, there may be circumstances, and many circumstances, where with a more developed record, we would be able to show that he in fact coerced her and overcame her consent, but we know that in the eyes of the law, that the age gap alone is not enough to show that he overcame her consent, because that's what the federal statutes tell us under 2243. Why is Esquivel-Quintana not helpful with this? I'm sorry, Your Honor. Esquivel-Quintana dealt with similar language about sexual abuse, but in the context of an Immigration and Naturalization Act, and it was a categorical approach case. But as part of that, it had to decide whether sexual abuse, what the sort of general meaning was, such that then to apply it categorically to a state felony. And there, what the Supreme Court said is, they sort of did a survey of all the laws and said that 16 seemed to be sort of the age of consent generally, and that sort of was the general understanding of what the term meant. Why would we not do something similar here? So I think that because you have to look at the term sexual abuse within the context of the guideline itself, we're trying to give meaning to what the commission intended. And the commission does not just use sexual. This isn't like, for example, trying to determine the meaning of pattern. It's a term of art that has been given meaning by both the commission and Congress. There is a sexual abuse guideline, like I said, 2A3.1. 2A3.2 refers to sexual abuse of a minor, and those specifically point you to the sexual abuse code sections 2241, 2242, and 2243. And that's also part of why we take the position that the guideline is genuinely ambiguous. That's one of the ambiguities, or sorry, that I pointed out, and that there are going to be state offenses that define age of consent differently. And so that becomes more of a question of policy than of law, of whether to bring in those state offenses that are broader than and more encompassing than the federal statutes. Can we talk about the Fourth Amendment issue for a second? Yes, Your Honor. I want to ask about good faith. What do we pin the good faith question to? Is it to TFO Lee's act of looking at the, of opening up the emails or the attachments? Or do we pin it to the decision of the magistrate judge to issue the warrant in the case? I do think we, the issue of the warrant itself is what would apply. So generally, you know, that was my thought too. And I think generally the way you look at it is to say, was there omissions or material omissions or misstatements of Frank's analysis? Or was it so lacking in probable cause that any reasonable officer would understand they didn't have, didn't have support for the warrant? That's sort of generally how we'd look at it. But that doesn't work in a case where the allegation is that you bootstrapped illegal information into the warrant. In that kind of case, don't we have to look at whether the illegal information itself outside of an independent source case where we're sort of excising out and we don't really have an independent source argument here? Well, I guess, Your Honor, that our position is that for 244 of 245 files, a person did actually view the files before. That gets to independent source. And as best as I can tell, not you, I know you weren't the one, but you didn't argue it. The court didn't address it. No, that's why we didn't raise it in our brief. And I understand that's fair. And you did the right thing by not doing that, I think, because not only that, but there would have had to have been a finding that the other non-tainted stuff prompted the search. And that finding wasn't made at a hearing. And so I don't know how you could have argued that. So what we have left is good faith. And I guess this gets back to my original question is how do we decide the good faith question? Don't we have to look at the act, the illegal act to see whether that was done in good faith? Well, here I believe it was done in good faith because she knew that a prior Google employee had viewed that image at one time. Now, the employee did not view the exact image that was contained within Real Heart's Google account, but she knew that the image that was hash matched had been viewed by a person. A good faith would have to be good faith as a matter of law. I mean, there is good faith fact, but she knew that they had not opened it. Yes, Your Honor. The legal implication is what the good faith is. And there was nothing prohibiting her from doing it. There's no law on point at that time that said she could not. What was the state of the law? So my colleague mentioned the Fourth Circuit case that came out this week. What was the state of the law when TFO Lee looked at? So I believe the Fifth Circuit was the first circuit to address this question, and they actually determined that it falls within the private scope doctrine if you view a hash matched file. I don't remember the order after that. I think the Third Circuit joined them and then the Ninth Circuit or the Sixth Circuit, I'm sorry, joined them. I understand that the state of the law at the time that she opened it was we said nothing. Fifth Circuit had said okay. Sixth Circuit had said okay. And the Ninth had not yet weighed in. Yes, Your Honor. So two circuits had decided in favor of what she did, and the Ninth Circuit, which took a contrary approach, had not yet weighed in. And like you said, the Eleventh Circuit did not have. How do we calculate all that in into the good faith question? Is it like a qualified immunity analysis? Is it what a reasonable officer would have done? Is it I relied on the fact that two circuits are there? How do we make that call? I think here there's no reason to apply the exclusionary rule here because she was not acting in bad conduct. There's no bad conduct to deter. She believed honestly that what she was doing was legal, and suppressing it here simply because the law was unsettled and she believed what she was doing was right would not serve any interest, further any interference of the exclusionary rule. So just so I understand, I think I'm sort of tracking with what Judge Luck is saying. In the ordinary good faith analysis, it's like was there good faith reliance on a facially valid warrant? Was there good faith reliance on a facially valid statute? Was there good faith reliance? Here we're saying like yeah, it's not quite, we don't quite have that. It doesn't really fit into one of those sort of pigeonholes. But the overarching theory of the exclusionary rule and the good faith rule apply in sort of a qualified immunity-ish kind of way, where at the very worst, you had like an emerging circuit split, and you're saying like, you know, there's simply no reason to think that this was culpable conduct. Yes, Your Honor. Is that sort of the way you're analyzing this? Yes, Your Honor. And thank you. I see my time has expired. So unless there's any other questions, we ask you affirm his convictions, vacate his sentence, and remand for re-sentencing. Okay, very well. Thank you. Mr. Escona, anything in rebuttal? In light of the fact that the government conceded on the issue, Your Honor, I think there's much too much for me to rebuttal, Judge. So thank you very much, Your Honor. Okay, very well. Thank you, Judge. All right, thank you both. All right, that case is submitted. We'll go on to the second